IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

DAVID STEWART,
THE ESTATE OF NORMA STEWART
(DOD 10/26/2006), and
CHARLES O. HENDRIX                                                                    PLAINTIFFS

V.                                    CASE NO. 12-CV-6052

STEPHEN L. DEMOTT,
GARLAND COUNTY TITLE COMPANY, LLC,
CAROL SIKORSKI, REGGIE A. GIBSON,
R.A. GIBSON, INC., FIESTA BAY, LLC,
MALVERN NATIONAL BANK and
STEPHEN MOORE                                                                         DEFENDANTS

## MEMORANDUM OPINION

Before the Court is a Motion for Summary Judgment filed by Separate Defendants Malvern National Bank and Stephen Moore. ECF No. 46. Also before the Court is a Summary Judgment filed by Separate Defendants Garland County Title Company, LLC, and Carol Sikorski (ECF No. 49), which has been adopted by Separate Defendants Reggie A. Gibson, R.A.; Gibson, Inc.; Fiesta Bay, LLC; Malvern National Bank; and Stephen Moore. Separate Defendant Stephen L. Demott has adopted both summary judgment motions. Plaintiffs David Stewart and The Estate of Norma Stewart have responded to both summary judgment motions. ECF Nos. 58 and 64. Plaintiff Charles O. Hendrix has also responded to both summary judgment motions. ECF Nos. 61 and 68. Some Defendants have filed replies. ECF Nos. 67 and 74. The matter is ripe for the Court's consideration.

## I. BACKGROUND

The specific facts of this lawsuit are difficult for the Court to ascertain given the voluminous content of the fact section of Plaintiffs' complaint and the unusual style in which it is written.

However, the Court is able to discern that this lawsuit is based on Plaintiffs seeking to recover damages related to their alleged interests in certain real property located in Hot Springs, Arkansas.[1]

In 2004, Separate Defendant Reggie A. Gibson began building condominiums on certain real property known as Fiesta Bay and Grand Isle in Hot Springs. At some point during the construction of these condominiums, Gibson approached Separate Defendant Malvern National Bank ("the Bank"), seeking a loan to finish the first of the units. This loan would be secured by a mortgage on the property. Malvern National Bank was aware that Plaintiff David Stewart and his then-living wife, Norma, had an interest in the property, and the Bank refused to make the loan to Gibson unless the Stewarts executed a subordination agreement. Malvern National Bank tasked Garland County Title Company with obtaining the documents required for the Bank to obtain title insurance in connection with the loan, including the subordination agreements. The Stewarts executed a subordination agreement on October 6, 2005,[2] and, following Norma Stewart's death, David Stewart executed another subordination agreement on July 31, 2006.[3] The subordination agreements made Malvern National Bank's interest that of first position and the Stewarts' interest became second.

Unbeknownst to Stewart, Plaintiff Charles O. Hendrix also claimed to have an interest in the property as a result of Hendrix having loaned $875,000 to Gibson for use in his development projects. That loan was allegedly collateralized by an unrecorded contract between Hendrix and Gibson for sale of the same property that the Stewarts also claimed an interest in. Garland Title

---

[1]Because the Court's opinion focuses on the statute of limitations issues in this case, its summary of the facts is likewise focused on the facts relevant to that issue.

[2]According to Stewart, Gibson appeared unannounced at the Stewarts' home shortly after Norma Stewart had returned from the hospital, and he insisted that they sign the subordination agreement.

[3]Stewart claims that he never signed the second subordination agreement. In a state court foreclosure action, however, the court found that the agreement was valid.

Company, having knowledge of Hendrix's unrecorded contract for sale, obtained a subordination agreement from Hendrix on October 6, 2005, and July 31, 2006.[4] These agreements made Malvern National Bank's interest that of first priority.

Following the loan from Malvern National Bank, the Fiesta Bay condominiums were completed and marketed. Gibson then made plans to build up the hill from Fiesta Bay on property known as Grand Isle. Unfortunately, in 2008, sales of the units ceased or slowed to a crawl, and Gibson defaulted on his loan. On December 23, 2008, Malvern National Bank filed a lawsuit in state court, alleging that Gibson had defaulted on a promissory note that was secured by a recorded mortgage on the property. Hendrix and David Stewart were named as defendants in the state court foreclosure action. Hendrix filed a counterclaim against Malvern National Bank, alleging that he held a pre-existing unrecorded interest in the property that was superior to the Bank's interest and that the Bank had assumed a duty to protect his prior unrecorded interest in the property by requiring him to execute a subordination agreement. On April 26, 2010, a judgment and decree of foreclosure was entered in favor of Malvern National Bank.[5] The Court also ruled in favor of the Bank on Hendrix's counterclaim. No party appealed the judgment.

The crux of Plaintiffs' complaint is that Defendants allegedly conspired together to deprive Plaintiffs of their security interests in the property by tricking them into subordinating their security

---

[4] In a state court foreclosure action, both of these agreements were found to be valid.

[5] The Court made the following findings: (1) the Bank's mortgage interest in the property was not subject to Hendrix's pre-existing unrecorded interest in the property; (2) the Bank did not require Hendrix to subordinate his pre-existing interest in the property to the Bank's mortgage interest; and (3) the Bank did not agree to monitor the use of the loan proceeds for Hendrix's benefit and thus assumed no duty to Hendrix to monitor the loan proceeds; (4) the Stewarts executed a valid subordination agreement in favor of the Bank on October 6, 2005; (5) Stewart executed a valid subordination agreement in favor of the Bank on July 31, 2006; (6) Stewart's interest in the property was subordinate and inferior to the Bank's interest in the property; and (7) the mortgages Hendrix had in the property were subordinate and inferior to the Bank's interest in the property. ECF Nos. 48-5 and 48-6.

interests in the property to a mortgage in favor of Malvern National Bank. Plaintiffs have sued for violations of the anti-tying provisions of the Bank Holding Act, 12 U.S.C. § 1972; violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961 *et seq.*; various state tort claims; and violations of the Arkansas Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-101 *et seq*. Plaintiffs have also sued Defendant Stephen L. Demott for legal malpractice. Defendants argue that all of Plaintiffs' claims are barred by the applicable statutes of limitations.

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) states that summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Under this standard, the inquiry is not whether the evidence favors one side or the other, but "whether a fair minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). When considering a summary judgment motion, the Court "must view the evidence 'in the light most favorable to the nonmoving party.'" *Sappington v. Skyjack, Inc.*, 512 F.3d 440, 445 (8th Cir. 2008) (quoting *F.D.I.C. v. Bell*, 106 F.3d 258, 263 (8th Cir. 1997)). To defeat a motion for summary judgment, however, the non-moving party must "make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "nonmovant must present more than a scintilla of evidence and must advance specific facts to create a genuine issue of material fact for trial." *Bell*, 106 F.3d at 263 (8th Cir. 1997). "In order to survive a motion for summary judgment, the non-moving party must be able to show sufficient probative evidence that would permit a finding in his favor on more than mere

speculation, conjecture, or fantasy." *Binkley v. Entergy Operations, Inc.*, 602 F.3d 928, 931 (8th Cir. 2010).

### III. DISCUSSION

Plaintiffs allege two federal claims against Defendants: (1) that Defendants participated in an illegal tying arrangement[6] in violation of 12 U.S.C. § 1972; and (2) that Defendants engaged in a racketeering enterprise in violation of 18 U.S.C. §§ 1961 *et seq*. Defendants argue that both of these claims, as well as all the state claims, are barred by the applicable statutes of limitation.

*A. Illegal Tying Claim*

Civil actions brought based on alleged violations of 12 U.S.C. § 1972 "shall be forever barred unless commenced within four years after the cause of action accrued." 12 U.S.C. § 1977(1). A cause of action based on this statute accrues when the bank commits the unlawful conduct. *Information Exchange Systems, Inc. v. First Bank Nat. Ass'n*, 994 F.2d 478, 486 (8th Cir. 1993). Here, the import of Plaintiffs' claim is that Malvern National Bank[7] committed acts prohibited by the federal banking statutes by requiring Plaintiffs to subordinate their security interests in certain property to a mortgage in favor of the Bank. All of the Bank's acts in that regard had to have occurred on or before July 31, 2006, when Plaintiffs signed the most recent subordination agreements. Plaintiffs, however, did not file their complaint until April 17, 2012, more than five

---

[6] A "'tying arrangement' in the antitrust context involves 'a seller's agreement to sell one product or service only if the buyer also buys a different product or service.'" *Varner v. Peterson Farms*, 371 F.3d 1011, 1018 n. 5 (8th Cir. 2004) (quoting BLACK'S LAW DICTIONARY 1523 (7th ed. 1999)).

[7] Plaintiffs' complaint states that all Defendants participated in an illegal tying arrangement in violation of 12 U.S.C. § 1972." ECF No. 1, ¶¶ 90-99. However, no tying claim can be stated against the individual defendants because § 1972 does not apply to natural persons; rather, its application is limited to banks and bank subsidiaries. *See Rae .v. Union Bank*, 725, F.2d 478, 480 (9th Cir. 1984).

years later.  Thus, Plaintiffs' claim pursuant to 12 U.S.C. § 1972 is barred by the statute of limitations.

  *B.  RICO Claim*

The limitations period for RICO civil claims is also four years.  *Hope v. Klabal*, 457 F.3d 784, 790 (8th Cir. 2006).  However, unlike the anti-tying statute, the limitations period for a civil RICO claim begins to run when a plaintiff discovers, or should have discovered, his injury.  *See Rotella v. Wood*, 528 U.S. 549, 556-57, 120 S. Ct. 1075, 1081-82 (2000); *Wal-Mart Stores, Inc. v. Watson*, 94 F. Supp. 2d 1027, 1033 (W.D. Ark. 2000).

Here, Plaintiffs allege that they were injured in this case when they were tricked into signing the subordination agreements in 2005 and 2006, making their priority interests in the property inferior to the interest of Malvern National Bank.  Plaintiffs claim that they did not discover and could not have discovered their injuries until May 7, 2010, when the final judgment was filed in the state court foreclosure action case.[8]  Thus, according to Plaintiffs, the limitations period for their RICO claim should begin to run on May 7, 2010.  The Court, however, must determine whether Plaintiffs should have discovered their injuries earlier.

Plaintiffs claim that they were not aware that they were signing subordination agreements and that they were led to believe that they were actually signing some other type of document.  According to Plaintiffs, this is why they did not discover that their interests had been subordinated until the judgment was filed in the foreclosure action.  Plaintiff Hendrix, however, testified in his deposition that he never read either subordination agreement before signing it and that, as a general practice,

---

[8]The Court notes that this argument contradicts Plaintiffs' assertion in their Complaint that they were aware of the existence of the subordination agreements in "late summer of 2008."  ECF No. 1, ¶¶ 78 and 79.

he never read documents before signing them. In the statute of limitations context, the discovery rule allows a claim to accrue when the litigant first knows or with due diligence should have known facts that will form the basis for an action. *Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 645-46, 130 S. Ct. 1784, 1793-94 (2010). Had Plaintiff Hendrix exercised reasonable diligence and read the two subordination agreements that he signed, he would have immediately discovered that he was allegedly being mislead and that he was actually signing an agreement to subordinate his interest in the property to that of Malvern National Bank. By not reading the agreements, Plaintiff Hendrix prevented himself from discovering his injury, which was the loss of his priority interest in the property. Accordingly, the Court finds that Plaintiff Hendrix should have discovered that he subordinated his interest when he signed the second subordination agreement on July 31, 2006.

Plaintiff Stewart also should have discovered his injury—the loss of his priority interest in the property—when he signed the two subordination agreements in 2005 and 2006. Stewart claims that the second subordination agreement is not valid because his signature was forged. However, the validity of the second subordination agreement is an issue that has already been decided in the state court action, and Stewart is precluded from questioning the validity of this agreement.

Under Arkansas law, issue preclusion bars relitigation of issues that were litigated by the parties in a previous suit. *Bradley Ventures, Inc. v. Farm Bureau Mut. Ins. Co. of Ark.*, 371 Ark. 229, 234, 264 S.W.3d 485, 490 (Ark. 2007). The following four elements must be met: (1) the issue sought to be precluded must be the same as that involved in the prior litigation; (2) the issue must have been actually litigated; (3) the issue must have been determined by a valid and final judgment; and (4) the issue must have been essential to the judgment. *Id*.

In the foreclosure action, the state court found that on July 31, 2006, Stewart executed a valid subordination agreement in favor of Malvern National Bank, which properly subordinated the interest of Stewart to the interest of Malvern National Bank. The issue in the foreclosure action is the same as the issue in the present action—the validity of the second subordination agreement. This issue was actually litigated in the foreclosure action and was determined by a final judgment entered on May 7, 2010. Stewart does not dispute that this issue was essential to the judgment. Because the elements of issue preclusion are met, Stewart is precluded from attacking the validity of the second subordination agreement.

The signing of the subordination agreements in 2005 and 2006 is what caused Stewart's injury—the loss of his priority interest. Stewart is now precluded from questioning the validity of the second agreement. Moreover, in a letter from Stewart to Malvern National Bank dated December 20, 2009, Stewart admitted to signing the July 2006 subordination agreement. Thus, the Court finds that had Stewart exercised reasonable diligence, he should have discovered that he was subordinating his security interest to that of the Bank on the dates that he signed the subordination agreements in 2005 and 2006. Accordingly, the Court finds that Plaintiffs' RICO claim is barred by the four-year statute of limitations.

### C. Equitable Tolling

Federal statutes of limitations are generally subject to equitable principles of tolling; however, such tolling is the exception, not the rule. *Rotella*, 528 U.S. at 560-61, 120 S. Ct. At 1084. Here, Plaintiffs allege that the statute of limitations should be tolled for Plaintiffs' claims because of the alleged acts of fraudulent concealment by Defendants. There is no evidence, however, of any act of fraudulent concealment that would have prevented Plaintiffs from learning that they were

subordinating their security interests to the interest of Malvern National Bank on the dates that the agreements were signed. Plaintiffs state that "[i]t was only after the dust of the foreclosure had settled" that it became apparent that Defendants conspired together to defeat Plaintiffs' security interest. ECF No. 59, p. 9. However, the failure of an injured party to discover, within the limitations period, a defendant's purpose underlying their conduct or the existence of a cause of action does not toll the limitations period. *See Jackson v. Union Nat. Bank of Macomb*, 715 F. Supp. 892, 895-96 (C.D. Ill. 1989). Here, the Court finds that the fact that Plaintiffs did not understand Defendants' allegedly fraudulent purpose underlying their efforts to persuade Plaintiffs to sign a subordination agreement does not excuse Plaintiffs' failure to discover their potential federal claims. Thus, their claims are time barred, and Defendants are entitled to summary judgment.

## IV. CONCLUSION

For the reasons stated above, the Court finds that the Motions for Summary Judgment (ECF Nos. 46 and 49) should be and hereby are **GRANTED** as to Plaintiffs' federal claims. Accordingly, Plaintiffs' illegal tying claim and RICO claim are **DISMISSED WITH PREJUDICE**.

With the dismissal of the federal claims upon which subject matter jurisdiction is based, the Court, exercising its discretion after a review of the relevant factors, is persuaded that the pendent state claims should be and hereby are **DISMISSED WITHOUT PREJUDICE**. *See* 28 U.S.C. § 1367(c). Plaintiffs may pursue these claims in the appropriate state court forum.

**IT IS SO ORDERED**, this 10th day of December, 2014.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge